UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | Case: 2:23-cr-20013<br>Assigned To : Leitman, Matthew F.<br>Referral Judge: Grey, Jonathan J.C.<br>Assign. Date : 1/5/2023<br>Description: INFO USA V. ADAMS (KB |
| | No. | |
| Plaintiff, | | |
| -vs- | | Hon. Robert H. Cleland |
| D-1   MATTHEW D. ADAMS, | Offenses: | 18 U.S.C. § 1957<br>26 U.S.C. § 7212(a) |
| Defendant. | | |
| _____ / | | |

## INFORMATION

The Deputy Assistant Attorney General charges:

## BACKGROUND

At all times relevant to this information:

1. Defendant MATTHEW D. ADAMS was a resident of Grosse Pointe Park, Michigan.

2. ADAMS was an employee of Company A from in or around 2004 through 2012. Company A was a building and maintenance company owned and operated by Individual A and members of his family.

3. In or around 2012 through at least 2017, ADAMS owned and operated MDA Property Services. MDA Property Services provided building and maintenance services.

4. From in or around 2012 through approximately January 2016, MDA Property Services was a contractor for Company A. Company A was MDA Property Services' only customer.

5. The Internal Revenue Services ("IRS") was an agency of the Department of the Treasury. The IRS had the responsibility for the ascertainment, computation, assessment, and collection of taxes, including income taxes. The Department of the Treasury was an agency of the United States.

6. Form 1099-MISC is an informational IRS tax form prepared by a business to report, among other things, payments by the business to another for goods or services.

7. Form 1120S is an IRS tax form used for corporate income tax returns for United States corporations. The form reports the income, gains, losses, deductions, credits, and other information for corporations that have elected Subchapter S corporation status.

## GENERAL ALLEGATIONS

8. From approximately 2008 through 2017, Defendant MATTHEW D. ADAMS sold illegal narcotics to Individual A.

9. Beginning in or around 2008, Individual A paid ADAMS for the illegal narcotics with funds embezzled from Company A. From approximately 2010 until September 2017, all narcotics purchased by Individual A from ADAMS were paid for with funds embezzled from Company A.

10. Beginning in or around 2012, ADAMS and Individual A agreed to make the payments for illegal narcotics appear like they were payments from Company A to ADAMS' company, MDA Property Services, for legitimate work performed by the business. MDA did, in fact, perform some legitimate work for Company A.

11. From 2013 through 2017, ADAMS was paid more than $10 million by Company A for illegal narcotics he sold to Individual A.

12. ADAMS was always paid by check for the illegal narcotics. These checks were either made out to ADAMS individually, or to one of his companies – most frequently MDA Property Services.

13. Defendant ADAMS deposited some of the checks received from Company A into his personal bank account, some of the checks into MDA Property Services' bank account, and cashed the remainder of the checks at a local liquor store. From 2011 through 2017, ADAMS cashed more than $5.3 million in checks constituting the proceeds from his illegal narcotics sales at the liquor store.

14. ADAMS deposited the following checks constituting proceeds from his illegal narcotics sales into the following bank accounts on the following dates:

| Date | Payor | Payee Name | Amount | Bank Acct. # ending |
|---|---|---|---|---|
| 7/31/2017 | Company A | MDA Property Services LLC | $21,750 | x2185 |
| 7/31/2017 | Company A | MDA Property Services LLC | $11,550 | x2185 |
| 8/3/2017 | Company A | MDA Property Services LLC | $21,450 | x2185 |
| 8/3/2017 | Company A | MDA Property Services LLC | $12.750 | x2185 |
| 8/9/2017 | Company A | MDA Property Services LLC | $23,775 | x2185 |
| 8/23/2017 | Company A | MDA Property Services LLC | $14,280.20 | x2185 |
| 8/23/2017 | Company A | Andary Acquisitions, LLC | $19.550 | x2185 |
| 8/31/2017 | Company A | Andary Acquisitions, LLC | $19,500 | x2185 |
| 8/31/2017 | Company A | MDA Property Services LLC | $17,500 | x2185 |
| 10/10/2017 | Company A | MDA Property Services LLC | $17,500 | x2185 |

15. ADAMS and Individual A agreed that beginning with tax year 2013, Individual A would cause Company A to issue a Form 1099-MISC to ADAMS or MDA Property Services reporting all payments, including payments for legitimate work and for illegal narcotics, made by Company A to ADAMS and his companies. ADAMS agreed to this, in part, because it would help make his income from selling narcotics appear like legitimate business income.

16. Company A issued Forms 1099-MISC to ADAMS or his companies for tax years 2013 through 2016. For each tax year, the amount of money reported on the Form 1099-MISC as paid to ADAMS or his businesses was less than the total actual amount paid by Company A to Defendant and his businesses, but significantly more than the amount paid for legitimate work.

17. ADAMS directed his tax preparer to use his business's bank records to calculate the business's gross receipts rather than use the information reported on Forms 1099-MISC. Defendant knew that these bank records did not show all of the proceeds from the illegal narcotics sales.

18. By directing his tax preparer to use his business's bank records to prepare MDA Property Service's Forms 1120S, ADAMS caused his tax preparer to prepare false tax returns for MDA Property Services and false individual tax returns for himself for tax years 2013 through 2016.

19. In 2017, ADAMS and MDA Property Services came under audit by the IRS. In the course of the audit, ADAMS made false statements to the IRS Revenue Agent. ADAMS told the IRS Revenue Agent that he did not cash checks or fail to report income MDA Property Services received from Company A on his business's tax returns. When later confronted about his check cashing activity by the Revenue Agent, ADAMS stated that he cashed checks as a favor to Individual A to provide Individual A with cash to use to gamble on sports. At no time did ADAMS provide Individual A with cash for Individual A to use to gamble on sports.

20. Defendant ADAMS also falsely told the Revenue Agent that ninety percent of the money MDA Property Services received from Company A was for legitimate work. In fact, only approximately three percent of the money MDA

Property Services and ADAMS received from Company A from 2013 through 2017 was for legitimate work. The rest was payment for illegal narcotics.

## COUNT ONE

21. The allegations contained in paragraphs 1 through 4 and 8 through 20 are realleged and incorporated as if fully set forth in this paragraph.

22. From in or about 2012 through October 2017, in the Eastern District of Michigan, and elsewhere, defendant MATTHEW D. ADAMS, knowingly engaged in a monetary transaction, in and affecting interstate commerce, in criminally derived property of a value greater than $10,000 that was derived from a specified unlawful activity.

In violation of Title 18, United States Code, Section 1957.

## COUNT TWO

23. The allegations contained in paragraphs 1 through 20 are realleged and incorporated as if fully set forth in this paragraph.

24. On or about December 7, 2017 and continuing up to and including March 27, 2018, in the Eastern District of Michigan, the defendant, MATTHEW D. ADAMS, did corruptly endeavor to obstruct and impede the due administration of the internal revenue laws by making false statements to an Internal Revenue Agent who was conducting an audit of his personal and business's tax returns regarding MDA Property Services' financial practices, the accuracy of MDA Property

Services' tax returns, his check cashing activity, and the purpose of his check cashing activity, among other false statements.

In violation of Title 26, United States Code, Section 7212(a).

DAVID A. HUBBERT
Deputy Assistant Attorney General
Department of Justice, Tax Division

/s/
JEFFREY A. MCLELLAN
SAM BEAN
Trial Attorneys
Department of Justice, Tax Division

DATE: 1/5/2023

**(Companion Case information MUST be completed by AUSA and initialed.)**

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>20-cr-20587 |
|---|---|---|

**NOTE:** It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| **Companion Case Information** | **Companion Case Number:** 20-cr-20587 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | **Judge Assigned:** Robert H. Cleland |
| ☒ Yes     ☐ No | **AUSA's Initials:** J.A.M |

**Case Title:** USA v. Matthew D. Adams

**County where offense occurred:** Wayne

**Check One:**     ☒ **Felony**     ☐ **Misdemeanor**     ☐ **Petty**

_____Indictment/ ✔ Information --- **no** prior complaint.
_____Indictment/_____Information --- based upon prior complaint [**Case number:**                    ]
_____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____     **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| | | |

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

January 5, 2023
Date

s/Jeffrey A. McLellan
Jeffrey A. McLellan
Trial Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: (202) 598-5918
Fax:    (313) 226-2873

E-Mail address: Jerffrey.A.McLellan@usdoj.gov
Attorney Bar #:

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.